United States District Court
Northern District of Indiana
Hammond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 2:15-CR-102 JVB |
| RAMIRO DELLANO and MELISSA HERNANDEZ | |

**OPINION AND ORDER**

This matter is before the Court on the joint motion of Defendants Ramiro Dellano and Melissa Hernandez to quash a search warrant and to suppress the statements Defendants made and the physical evidence seized on August 26, 2015 (DE 65). An evidentiary hearing was held on December 7, 2018. The parties filed simultaneous supplemental briefs on January 18, 2019. They were given the opportunity to file simultaneous responses to each other's supplemental briefs on February 1, 2018, but neither the Government nor Defendants have chosen to do so. At the hearing, Defendants requested oral argument following the completion of supplemental briefing, but under these circumstances, the Court doesn't believe that oral argument is necessary. Accordingly, the motion is ripe for decision.

**A.   Facts**

According to his search warrant affidavit, on the morning of August 26, 2015, Hammond police detective Marc Ferry took a call from DEA agent David Zamora, who asked if the Hammond narcotics unit could investigate a house for him. Zamora described the house as blue and located two houses either north or south of 4836 Columbia, with a green Jeep Cherokee

parked on the street in front of it. Zamora stated that he had just received information that the house contained 100 pounds of marijuana and possibly some cocaine. Ferry and several other officers went to the 4800 block of Columbia Avenue, where they saw a blue house at 4842 Columbia, two houses south of 4836 Columbia, with a green Jeep Cherokee parked in front of it. Ferry ran the Jeep's plate and discovered that it was registered to a green 1994 Honda. The mismatched plate is a violation of an Indiana statute.

After the officers had watched the blue house for about an hour and a half, they saw a Hispanic man leave the house, get into the Jeep, and make a U-turn on Columbia Avenue, in violation of a Hammond ordinance. Detectives Miller and Gonzales were waiting nearby in a marked car. They conducted a traffic stop of the Jeep about two blocks away from the blue house. The driver was Defendant Ramiro Dellano. A drug sniffing dog was brought to the scene and alerted for the presence of drugs in the car. The Jeep was then searched and a suspected marijuana cigarette was found along with several pieces of electronic equipment. Dellano explained that he worked for a cable company. Ferry testified that he asked if Dellano had proof of his employment with him and Dellano said no, but he had work shirts back at his house that would verify his employment. Ferry then asked Dellano to go back to his house and Miller and Gonzales drove him there.

Dellano had told the officers that his girlfriend, Melissa Hernandez, was inside the residence. Ferry knocked on the door at 4842 Columbia. Hernandez opened it slightly, told Ferry she needed to get dressed, and closed the door. A short time later Hernandez came out of the house and quickly closed the door behind her. At this point, Gonzales, who was outside the door with Ferry, told Ferry that he smelled the odor of marijuana in the air. The drug sniffing

2

dog was then brought to the house. The dog alerted to the front door of the house, indicating the presence of the odor of drugs. Ferry then applied to the Hammond city judge for a search warrant on the basis of the facts recited above. During the execution of the search warrant 300 pounds of marijuana and 250 grams of cocaine were found hidden in the basement.

**B.   Discussion**

All parties agree that, on the authority of *United States v. Jardines*, 569 U.S. 1 (2013), bringing the dog onto the porch to sniff for drugs without first obtaining a warrant was an illegal search. Accordingly, in this case, the fact that the dog alerted for the presence of drugs at the front porch must be discounted in determining whether there was probable cause to issue a warrant to search Defendants' house for drugs.

Defendants also claim that the statement in the search warrant affidavit that Gonzalez reported smelling an odor of marijuana in the air as he stood on the porch when Hernandez opened the door the second time must also be excised because his presence on the porch was an illegal search under *Jardines*. The Court disagrees.

In *Jardines*, the Supreme Court recognized an implied license to walk up the front path of a house and knock on the door. *Id.* at 8. This license extends to police officers as well as Girl Scouts and trick-or-treaters. *Id.* While there is no evidence that either Defendant expressly told the officers they could approach the front door, neither is there any evidence that they were told they were not permitted to do so. Thus, they could rely on the implied license. The proposition that the officers may have gone onto Defendants' porch in the hopes that they would ultimately be able to search the house for drugs does not invalidate this license. Nothing in *Jardine* or any

3

other case Defendants cite suggests that simply approaching the front door and knocking is in any way unlawful. Nor have Defendants pointed the Court to any authority suggesting that a police officer's acts of inhaling and exhaling and noting what his sense of smell detects while he is on the porch of a house for the purpose of speaking to the occupant constitute a search. Because Gonzalez conducted no search while he was on the porch, his observation regarding the smell of marijuana in the air when the door to Defendants' house was opened will not be excised from the search warrant affidavit.

Defendants argue further that the warrant to search Defendants' house must be voided because they have shown by a preponderance of the evidence that Detective Ferry made material false statements or omitted material facts either intentionally or with reckless disregard for the truth. According to Defendants, if the false material is set aside or the omitted material is added, the affidavit is insufficient to establish probable cause. *See Franks v. Delaware*, 438 U.S. 154 (1978).

The first alleged falsehood Defendants claims is that the warrant affidavit says there was no proof of Dellano's employment at the traffic stop. To begin with, Defendants misrepresent what the affidavit actually said: "Dellano stated that he worked for a cable company but did not have any proof at the [traffic] stop." (DE 65-1 at 5.) Although pay stubs for Dellano were in the Jeep at the time of the traffic stop, Defendants have presented no evidence that Dellano did not make the statement Ferry attributed to him or that Ferry knew when he signed the affidavit that the pay stubs were in the Jeep. Moreover, whether there was proof of Dellano's employment in the Jeep is immaterial to whether there was probable cause to search Defendants' house for drugs. The evidence falls far short of establishing that this statement was an intentional

4

falsehood or was made with reckless disregard for its truth.

Defendants next claim is that the affidavit's descriptions of who first approached the door and when Gonzalez smelled marijuana do not agree with Gonzalez's testimony at the evidentiary hearing. A careful reading of the affidavit and the transcript does not reveal any material discrepancies. Gonzales testified that he first smelled marijuana the first time Hernandez opened the door but told Ferry only after Hernandez opened the door a second time and exited the house. (DE 75 at 86.) Ferry, not Gonzalez, prepared and signed the affidavit.

Defendants also claim that Gonzalez's assertion that he smelled marijuana in the air was not truthful in light of the fact that it was unburnt, hidden in the basement behind a wall, packaged in cellophane wrapping, and located inside plastic trash bags with dryer sheets to mask the smell. The Court was able to observe Gonzalez at the hearing and assess his credibility. Nothing in his demeanor or the way he responded to questioning left the impression that he was lying in his assertion that he could smell marijuana in the air when the door to Defendants' house was opened. The Court notes the small size—776 square feet—of the house and the large quantity—300 pounds—of the marijuana and is unable to conclude that Gonzalez lied about detecting the odor of marijuana from the front porch of the house.

Defendants also make much of the fact that the search warrant affidavit says Gonzalez smelled marijuana while Gonzalez testified that he smelled raw marijuana. The Court finds that the inclusion of the word "raw" in the search warrant affidavit would not have had any effect on the judge's probable cause determination and cannot conclude that the omission was either reckless or deliberately false.

Defendants further attack Gonzalez's credibility because, in the affidavit for the search

warrant, Ferry stated that Gonzales seized a suspected marijuana cigarette from the front center ashtray of the Jeep, while Gonzalez testified that a burnt marijuana cigarette was found in the center console-like area of Dellano's vehicle and the dog handler's report recites that Gonzalez told him that a portion of a marijuana cigarette was found in the pouch on the back of the front passenger seat. The difference between Gonzalez's testimony, almost three and a half years after the event, and the search warrant affidavit is insignificant and raises no credibility concerns for the Court.

Nor can the Court conclude that Gonzalez's assertion that he smelled marijuana in the air when the door to Defendants' home was opened is a lie because the dog handler's report had the marijuana cigarette in a different location than the one stated in the search warrant affidavit. Gonzalez testified that he had never seen the dog handler's report before the evidentiary hearing. The dog handler was not called to testify. The Court is not convinced by a preponderance of the evidence that the statements in the search warrant affidavit concerning the marijuana cigarette are lies.

After considering the statements in the search warrant affidavit and the hearing testimony, the Court concludes that Ferry's search warrant affidavit established probable cause to search the blue house even when the dog sniff results are disregarded. However, as the Government points out in its post-hearing brief, in addition to the probable cause finding, the Court must make a factual finding on whether the officers would have applied for a warrant without the dog sniff evidence. *See United States v. Markling*, 7 F.3d 1309, 1317-18 (7th Cir. 1993). The other evidence regarding the blue house is not so overwhelming as to compel the conclusion that Ferry inevitably would have applied for a warrant without the illegal dog sniff.

6

The Government never asked him that question.  Significantly, Ferry himself never smelled marijuana while he was with Gonzalez on the porch of the house.  Moreover, he testified on cross-examination that he believed there was probable cause without the dog sniff on the basis of Gonzalez's statement that he could smell marijuana, but called for the dog anyway because "[w]e wanted to further it by bringing the canine." (Tr., DE 75 at p. 74, l. 16.) This suggests that he believed he needed more evidence to convince a magistrate to issue a warrant. With no more than this to go on, what Ferry would have done is a matter of pure speculation. The Government asserts that it is obvious that the Government would have applied for a warrant, but makes no cogent argument as to why this is so.  Accordingly, the Court is unable to conclude by a preponderance of the evidence that the officers would have applied for a warrant without the tainted evidence of the illegal search.

### C.     Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motion to suppress evidence. The evidence found during the search of their house on August 16, 2015, is suppressed.

SO ORDERED on February 26, 2019.

s/ Joseph S. Van Bokkelen  
Joseph S. Van Bokkelen  
United States District Judge